**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-30105
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CHARLES E. MILLER,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana
(CR 94 50066 02)

(August 23, 1995)

Before GARWOOD, WIENER, and PARKER, Circuit Judges.

PER CURIAM[*]:

Charles E. Miller ("Miller") was convicted of one count of conspiracy to defraud the United States by filing false claims, in violation of 18 U.S.C. § 286, and five counts of filing false claims, in violation of 18 U.S.C. §§ 287 and 2. Miller was

---

[*] Local Rule 47.5 provides:
"The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion should not be published.

indicted with his wife, Janice M. Miller (Janice), who pleaded guilty to all six counts and one additional count. The case involves a scheme to obtain money by filing false income tax returns.

Miller moved for a judgment of acquittal at the close of the Government's case and at the close of all evidence. After considering Miller's objections to the Pre-Sentencing Report ("PSR"), the district court sentenced him to 41 months imprisonment, three years supervised release, and ordered him to make restitution of $9,365.75, jointly with Janice. Miller filed a timely notice of appeal.

I. Sufficiency of the Evidence

Miller argues that there was insufficient evidence to support his conspiracy conviction. In reviewing the sufficiency of the evidence, this court must determine whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Martinez*, 975 F.2d 159, 160-61 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1346 (1993). Reasonable inferences are construed in accordance with the jury's verdict. *Id.* at 161. The jury is solely responsible for determining the weight and credibility of the evidence. *Id.* This court will not substitute its own determination of credibility for that of the jury. *Id.* The scope of appellate review remains the same whether the evidence is direct or circumstantial. *United States v. Lorence*, 706 F.2d 512, 518 (5th Cir. 1983).

A. Conspiracy Count

Miller was convicted under 18 U.S.C. § 286. To prove a person's involvement in a conspiracy to defraud under 18 U.S.C. § 286, the Government must establish: "(1) that there was a conspiracy to defraud the United States; (2) that the defendant knew of the conspiracy and intended to join it; and (3) that the defendant voluntarily participated in the conspiracy." *United States v. Okoronkwo*, 46 F.3d 426, 430 (5th Cir. 1995), *petition for cert. filed*, (U.S. May 18, 1995) (No. 94-9465) and *petition for cert. filed*, (U.S. May 22, 1995) (No. 94-9366). Miller does not challenge the falsity of the returns or that a conspiracy existed.

"Participation in a conspiracy need not be proven by direct evidence: a conspirator's knowledge and intent can be shown by circumstantial evidence, and a common purpose and plan may be inferred from a development and collocation of circumstances." *Okoronkwo*, 46 F.3d at 431 (internal citations and punctuation omitted). Once the Government has produced evidence of a conspiracy, only "slight" evidence is needed to connect an individual to that conspiracy. *United States v. Duncan*, 919 F.2d 981, 991 (5th Cir. 1990), *cert. denied*, 500 U.S. 926 (1991).

Miller was also convicted under 18 U.S.C. § 287, which prohibits a person from presenting a claim to any department or agency of the United States "knowing such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287; *Okoronkwo*, 46 F.3d at 430. Proof of knowledge and intent "may arise by inference from all of the facts and circumstances surrounding a transaction."

*United States v. Aubrey*, 878 F.2d 825, 827 (5th Cir.), *cert. denied*, 493 U.S. 922 (1989).

Tower Financial Services processed electronic tax returns and advanced Refund Anticipation Loans (RAL) through Bank One. Seven individuals testified that Janice approached them about filing their 1991 tax returns. Generally, Miller drove them and Janice to Tower Financial to complete a tax return and other paperwork. Janice filled out the tax returns, but on one occasion told Miller what to write on a return. In each instance, the tax returns contained false information about income earned in 1991, falsely named an employer, and named nonexistent dependent children or falsely indicated that older children were born in 1991. The purpose was to claim earned income credit, which is intended for low income wage earners with more than one child living with them.

Glen W. Finister testified that Miller and Janice picked him up and took him to Tower Financial. Miller waited in the car while Finister and Janice went into the building and filled out the return. Miller drove and accompanied Finister to pick up and cash the check. Miller was in the car when Janice took the money from Finister and gave him some back. Miller and Janice then dropped Finister off at home.

James Lewis Miles testified that Miller sat on the couch while Janice got information from Miles for his tax return. Miller drove Miles and Janice to Tower Financial. Miller waited in the car while they submitted the paperwork which Janice had already completed. Miller picked up Miles and drove him to pick up and

4

cash the check.  In the car, Janice took the money and returned a portion of the proceeds to Miles.

Burney Collins and Mary Hunter testified that Miller did not have anything to do with filing their returns.

Wallace E. Johnson testified that Miller drove him and Janice to Tower Financial.  Miller stayed in the car while Janice filled out the paperwork.  Janice told Johnson that she needed his social security number to help Miller get his tax return. Miller alone drove Johnson to pick up the check.  Miller asked Johnson for the check.  Miller then picked up Janice, and the two drove Johnson to cash the check.  Miller waited in the car while they cashed the check.  They returned to the car where Janice, in the front seat with Miller, counted out money, kept most of it, and returned some to Johnson.

Ora L. Brock testified that Miller came with Janice to pick up Brock to pick up the check.  Miller stayed in the car while Brock and Janice got the check.  Miller and Janice drove Brock to cash the check.

Alvin Mack testified that he talked to Miller and Janice about filing a tax return.  Janice told Miller to show Mack where to sign the forms.  Miller filled out or helped Mack fill out a return. When Mack told Miller and Janice that an agent had come to his house, Miller told Mack either that he did not have to talk or not to talk to the agent.

In sum, Miller was more than merely present.  There is sufficient evidence from which a rational jury could conclude that

5

Miller had knowledge of and participated in the preparation of fraudulent tax returns.

B. Substantive Counts

Miller asserts in conclusional terms that his conviction on all counts should be reversed based on insufficient evidence. A party to a conspiracy may be held liable for the substantive offenses of a co-conspirator as long as the acts were reasonably foreseeable and done in furtherance of the conspiracy regardless of whether he had knowledge of or participated in the substantive acts. *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946); *United States v. Jensen*, 41 F.3d 946, 955-56 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1835 (1995); *United States v. Maceo*, 947 F.2d 1191, 1198 (5th Cir. 1991), *cert. denied*, 503 U.S. 949 (1992). The evidence supports Miller's conspiracy conviction and the conclusion that it was foreseeable that Janice would file fraudulent claims outside of Miller's presence.

II. *Brady* Violations

Miller argues that the Government failed to turn over tax returns filed by Miller and copies of memoranda of interviews conducted by Internal Revenue Service Special Agent Mitch Kugle, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

A. Tax Returns

To show a *Brady* violation, Miller must show that 1) the prosecution suppressed or withheld evidence, 2) the evidence was favorable, and 3) the evidence was material to the defense. *United States v. Stephens*, 964 F.2d 424, 435 (5th Cir. 1992). "The

6

evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 435-36 (internal quotation and citation omitted).

Miller filed a subpoena duces tecum to Special Agent Kugle for all tax returns filed by Charles Miller for the past five years. He asserts that, although the IRS promised to send copies of Miller's returns, none was ever produced.

Miller seeks to have the case remanded for an in camera review of the Government files to determine whether Miller had filed tax returns in the past five years. Miller relies heavily on this Court's decision in *United States v. Buford*, 889 F.2d 1406 (5th Cir. 1989). Miller argues that the theory of his defense was that his wife performed unlawful acts and he was merely present on some occasions. He claims that without the requested tax returns, he was unfairly prejudiced, as was the defendant in *United States v. Buford*, *supra*, because the jury was more likely to believe that he aided and abetted others to file fraudulent returns if he had not paid his own taxes.

The Government distinguishes *Buford* on its facts. In *Buford*, a tax-evasion case, Buford testified that he had not failed to file income tax returns. 889 F.2d at 1407-08. To impeach Buford, the Government introduced a certificate derived from information in Buford's Individual Master File (IMF) which showed that he failed to file returns. *Id.* The Government did not allow Buford to

7

examine his IMF to evaluate the accuracy of the information contained in the certificate. *Id.*

In the instant case, the Government did not assert that Miller's personal income tax return contained false or fraudulent information. The truth or falsity of Miller's returns was not in question. *Buford* is inapposite.

Miller has not shown how his tax returns for the five years preceding the trial were material to his defense, how their production would have changed the outcome of the case, or that the failure to produce them undermined the integrity of the trial. *See United States v. Masat*, 948 F.2d 923, 932 (5th Cir. 1991), *cert. denied*, 113 S. Ct. 108 (1992). Miller has not shown a *Brady* violation.

B. Davenport Interview Transcript

Miller argues that he sought copies of memoranda of interviews conducted by Internal Revenue Service Special Agent Mitch Kugle, specifically the interview of Hunter Davenport. He argues that he could have used this memorandum for impeachment evidence of the Government's witness, Betty Brooks.

"The Jencks Act requires that after a Government witness has testified, the Government must produce any `statement' of the witness that the Government possesses. The statute defines `statement' in relevant part as `a written statement made by said witness and signed or otherwise adopted or approved by him.'" *United States v. Ramirez*, 954 F.2d 1035, 1038 (5th Cir.) (citations omitted), *cert. denied*, 112 S. Ct. 3010 (1992). The underlying

8

purpose of the Jencks Act "is solely to enable the defense to impeach a government witness by bringing any such variances to the attention of the jury during cross-examination." *United States v. Prieto*, 505 F.2d 8, 11 (5th Cir. 1974).

"[A]gent's interview notes are not `statements' of the witness under § 3500(e) unless the witness `signed or otherwise adopted or approved the report,' 18 U.S.C. § 3500(e)(1), or the notes were `substantially verbatim reports' of the witness interview, 18 U.S.C. § 3500(e)(2)." *United States v. Pierce*, 893 F.2d 669, 675 (5th Cir. 1990) (citation omitted). "The district court's determination of this issue is a fact question that will not be overturned unless it is clearly erroneous." *United States v. Hogan*, 763 F.2d 697, 704 (5th Cir. 1985).

This issue is meritless. Miller was allowed to, and did, review the Government files, which included the memoranda in question. There is no indication that Davenport adopted or approved the memorandum of his interview with Agent Kugle. Moreover, Miller asserts that he wanted this memorandum to impeach Brooks. He does not argue that he sought it to impeach Davenport. This purpose does not fall within the purview of the Jencks Act. *See Prieto*, 505 F.2d at 11.

III.  Sentencing

The PSR recommended the following adjustments to Miller's base offense level:  (1) a three-level increase because the loss exceeded $10,000 pursuant to U.S.S.G. § 2F1.1(b)(1)(D); (2) a two-level increase because the offense involved more than minimal

9

planning; and (3) a three-level adjustment for his role in the offense as a manager or supervisor pursuant to § 3B1.1(b).  The PSR computed Miller's total offense level as 14, with a criminal history category of V, resulting in a guideline imprisonment range of 33 to 41 months.

Miller filed objections to the PSR, challenging these adjustments.  The district court adopted the factual statements and recommendations of the PSR, sentencing Miller to 41 months incarceration.

This Court reviews the application of the Sentencing Guidelines *de novo* and the district court's findings of fact for clear error.  *United States v. Wimbish*, 980 F.2d 312, 313 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 2365 (1993).  A sentence imposed under the Guidelines will be upheld if it is the result of the correct application of the Guidelines to factual findings that are not clearly erroneous.  *United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir.), *cert. denied*, 115 S. Ct. 214 (1994).  A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole.  *Id.*

A.  Role in the Offense

1.  Manager or Supervisor

Miller argues that the district court erred in applying § 3B1.1(b) and that the court should have applied § 3B1.2.  The district court found that Miller's role in the conspiracy was that of a manager, a finding of fact reviewed for clear error.  *Zuniga*, 18 F.3d at 1261.

10

Under § 3B1.1(b) a defendant's base offense level is increased by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." To qualify for the adjustment the defendant must have been the organizer, leader, manager, or supervisor of one or more participants. § 3B1.1, comment (n.2). For purposes of § 3B1.1, the sentencing court must examine the "contours of the underlying scheme." *United States v. Mir*, 919 F.2d 940, 945 (5th Cir. 1990). Accordingly, an increase for a managerial role does not depend on the specific role of the defendant in the offense of conviction; rather, the increase is based on the defendant's role in conduct encompassed within the scope of the offense of conviction and any relevant conduct. *United States v. Eastland*, 989 F.2d 760, 769 & n.18 (5th Cir.), *cert. denied*, 114 S. Ct. 246, *and cert. denied*, 114 S. Ct. 443 (1993). Factors the sentencing court should consider include

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

§ 3B1.1(b) comment (n.4). The defendant's role in a criminal activity for the purposes of § 3B1.1 may be deduced inferentially from available facts. *United States v. Manthei*, 913 F.2d 1130, 1135 (5th Cir. 1990).

11

The PSR reported that Miller assisted Janice and participated in the crime by assisting the movement of other participants to carry out acts in furtherance of the conspiracy, that he was present when the other participants committed overt acts in furtherance of the conspiracy, and that he shared in the fruits of the crime. Given the factors relevant to determining a defendant's role in the offense, the district court's finding that Miller acted as a manager or supervisor is not clearly erroneous.

If the defendant objects to the findings in the PSR, the Government must establish the factual predicate "by a preponderance of relevant and sufficiently reliable evidence." *United States v. Elwood*, 999 F.2d 814, 817 (5th Cir. 1993). Miller, citing *Elwood*, argues that the conclusional statement in the PSR that his role is deemed that of a manager was not reliable. *Elwood* does not support Miller's argument. In *Elwood*, the Government found that Elwood was an organizer or leader under § 3B1.1(a) based solely on the conclusions of the DEA and the prosecutor. 999 F.2d at 817. The Court held that, although the PSR generally bears sufficient indicia of reliability to be considered evidence by the district court, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *Id.* at 817-18; *see United States v. Patterson*, 962 F.2d 409, 414-15 (5th Cir. 1992).

The PSR's conclusion that Miller was a manager was based on trial testimony. Miller did not demonstrate that the information contained in the PSR is materially untrue. *See United States v.*

12

*Shipley*, 963 F.2d 56, 59 (5th Cir.), *cert. denied*, 113 S. Ct. 348 (1992).

### 2.  Fewer than Five Participants

Miller also argues that the application of § 3B1.1(b) was inappropriate because there were fewer than five participants in the conspiracy.  He argues that there was a series of several different conspiracies involving fewer than 5 people, not one ongoing conspiracy.  He argues that after Janice returned part of the RAL money to the tax filer, that particular conspiracy was over.

Miller's argument lacks merit.  Section 3B1.1(b) provides for a 3-level increase for managers or supervisors if "the criminal activity involved five or more people or was otherwise extensive." Miller was convicted of conspiracy and five substantive acts committed in furtherance of the conspiracy.  The district court did not err in finding that the "criminal activity" involved five or more people.

Miller notes parenthetically that "it is questionable whether or not Mary Hunter was involved as a knowing participant."  Because Miller did not adequately brief this issue, this Court will not address the question.  *See Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).  Miller does not argue that the other tax filers were not knowing participants. Thus, even if Hunter was not a knowing participant, Miller's sentence would not be affected.

### 3.  Minor Participant

13

Because the PSR described him as an "assistant" to Janice, Miller argues that the district court misapplied the guidelines in refusing to grant a reduction in his offense level under § 3B1.2[1] for his minimal or minor role in the overall conspiracy. The gravamen of Miller's argument is that there was no evidence that he ever exhibited knowledge of the scope or structure of the organization involved. He is essentially challenging the sufficiency of the evidence to prove an element of the conspiracy conviction, as discussed above. This he cannot do through a sentencing challenge. The district court's finding that Miller was not entitled to an adjustment for being a minor participant in the conspiracy is not clearly erroneous. *See United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989), *cert. denied*, 495 U.S. 923 (1990).

B. Loss Calculation

The district court found that the amount of loss exceeded $10,000, but was less than $20,000, and increased Miller's offense level by three points pursuant to § 2F1.1(b)(1)(D). Miller concedes he was involved with $7934 in losses (to Brock, Finister, Johnson, Miles, and Mack), and argues that only two points should have been added to his base offense level. Miller

---

[1] A district court must reduce a defendant's offense level by four levels if it determines that he is a minimal participant in the offense for which he was convicted, or by two levels if the defendant was a minor participant. § 3B1.2; *see United States v. Gadison*, 8 F.3d 186, 197 (5th Cir. 1993). The defendant bears the burden of proving that his role in the offense was minor or minimal. *United States v. Brown*, 7 F.3d 1155, 1160 n.2 (5th Cir. 1993).

14

argues that the amount of loss should not include uncharged offenses, specifically that of Collins and Mack.[2]   Miller also argues that amount of loss should not include Hunter and Collins because Miller was not involved with their fraudulent filings.

Miller's argument concerning the Hunter losses is meritless. Miller was convicted of this offense, and the loss was properly attributable to him.   The district court's calculation of the amount of loss is a factual finding, reviewed by this Court for clear error.   *United States v. Chappell*, 6 F.3d 1095, 1101 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1232, 1235 (1994).   A defendant may be held liable for the substantive acts of a co-conspirator if the acts were relevant conduct, *i.e.*, reasonably foreseeable conduct done in furtherance of the conspiracy.   *See* § 1B1.3(a)(1)(B); *United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir. 1992).   Under the guidelines, conduct is relevant to an offense if there is "sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct."   *United States v. Bethley*, 973 F.2d 396, 401 (5th Cir. 1992) (internal quotations and citations omitted), *cert. denied*, 113 S. Ct. 1323 (1993); *see also*, § 1B1.3(a)(2) (conduct is relevant if it is "part of the same course of conduct or common scheme or plan as the offense of conviction").

---

[2]   Because Miller concedes that he was involved in the Mack losses, this Court does not address this issue.

The fraudulent tax filing by Janice and Collins followed the same pattern as the other filings carried out in furtherance of the conspiracy.  The district court properly considered the Collins filing as relevant conduct.  The district court's finding regarding the amount of loss is not clearly erroneous.

C.  More than Minimal Planning

The district court found that the offense involved more than minimal planning and increased Miller's offense level by two points pursuant to § 2F1.1(b)(2)(A).  Miller argues that this was erroneous because the government was unable to prove planning on the part of Charles Miller.

The commentary to § 2F1.1 cross-references the commentary to § 1B1.1 for a definition of "more than minimal planning."  § 2F1.1 comment (n.1).  The guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form."  § 1B1.1 comment (n.1(f)).  It "is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune."  *Id.*

Miller's argument is without merit.  The fraudulent electronic tax filings "involved repeated acts over a period of time," and were not simply crimes of opportunity.  *See* § 1B1.1, comment (n.1(f)).  The district court's finding that the offense involved more than minimal planning is not clearly erroneous.

AFFIRMED.

16